**Robert P. WINKLER, Relator,**

v.

**PARK REFUSE SERVICE, INC., Commissioner of Economic Security, Respondents.**

**No. C7–84–1557.**

Court of Appeals of Minnesota.

Jan. 22, 1985.

**122**

Daniel J. Ward, St. Cloud Area Legal Services Ass'n, St. Cloud, for relator.

Jerry Henkelmeyer, President, Park Refuse Service, Inc., St. Cloud, for Park Refuse Service, Inc.

Laura Mattson, Special Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Heard, considered, and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

WOZNIAK, Judge.

Relator Robert P. Winkler appeals from the determination of the Commissioner of Economic Security that he was discharged from his employment for misconduct and was disqualified from the receipt of unemployment compensation benefits. We affirm.

## FACTS

Relator Winkler was employed by Park Refuse Service from November 10, 1983, to January 1984 as a truck driver. On January 10, 1984, Winkler was arrested in his home pursuant to a warrant from the State of Missouri and taken to the Stearns County jail. Before being taken, he requested his wife inform his work partner that he would not be at work on the following day because of a "family emergency" and to inform the employer. The partner did inform the employer.

On January 11 or 12, the employer's secretary and the employer called Winkler's wife for information about relator. She responded that she did not know when her husband would be returning to work and not to call her again. On January 13, she was contacted by the employer and again said that she did not know his status or when he would be returning to work.

Employer learned from a third party that a warrant had been issued for Winkler's arrest. He called law enforcement agencies and finally discovered Winkler was being held in Benton County. He then learned of the circumstances of the arrest, and was allowed to speak to Winkler who informed him that he felt the matter would be resolved. Winkler testified that he informed his employer that he would be available for work on Saturday, January 21. The employer testified that he was told by Winkler that he would be back on Monday, January 16, and he would try to hold his job open. Winkler did not return to work on January 16 and did not contact employer. Employer hired a temporary worker to replace Winkler and, on January 18, employer hired the replacement permanently. When Winkler returned to the workplace on January 20, he was informed that he had been replaced.

Winkler filed a claim for unemployment compensation benefits effective January 22, 1984. After a determination by an appeals referee that Winkler had been involuntarily separated from his employment, the Commissioner of Economic Security remanded the matter to a different referee for additional testimony. After the second hearing, the referee determined that Winkler voluntarily discontinued his employment

without good cause attributable to the employer and was disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1 (Supp.1983).

On appeal, the Commissioner adopted the findings of the referee, but modified the decision to hold that Winkler was discharged for misconduct. The Commissioner found him ineligible for the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (Supp.1983).

## ISSUE

Was Winkler discharged for misconduct and ineligible for unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2)?

## ANALYSIS

█ Under the narrow scope of review available to this court in reviewing the determination of the Commissioner, we may reverse only if there is inadequate evidence in the record to support the findings of the Commissioner. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

█ Here, there is adequate support for the finding by the Commissioner that Winkler was discharged for misconduct. He was arrested on an outstanding criminal warrant. Winkler had his work partner contact his employer to inform him that Winkler would not be able to work the following day. The employer later determined that he was in jail on a warrant. Although Winkler testified that employer promised him that his job would be held open until his return by January 21, employer presented evidence that he expected Winkler to return by the 16th and that he did not promise to hold the job for any period of time.

Winkler argues that the conflicting testimony was taken at two separate proceedings before two different referees. He argues that, because the second referee did not actually hear his testimony, but only read the transcript of his testimony, no deference should be given by the Commissioner to the referee's determination of credibility.

█ It is settled that, on appeal, the Commissioner may "affirm, modify or set aside any finding of fact or decision, or both, of the referee." Minn.Stat. § 268.10, subd. 5 (Supp.1983). The Commissioner is empowered to consider and weigh the evidence in the case and to render a decision accordingly. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973); *Ramirez v. Metro Waste Control Commission*, 340 N.W.2d 355 (Minn. Ct.App.1983). This court reviews the determination of only the Commissioner, not the referee. The test on appeal is "whether there is reasonable evidence in the record to sustain the decision of the [Commissioner] rather than the [referee]." *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943).

█ Although the Commissioner does not observe the demeanor of the witnesses during the evidentiary hearing, we are in no position to question the Commissioner's determination of credibility. *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App.1984). The Commissioner's determination of credibility is adopted by this court.

█ We agree with the Commissioner that Winkler was involuntarily terminated from his employment. The termination occurred on the action of the employer in hiring a replacement for Winkler. The employer, under this fact situation, had no alternative since regular contract routes had to be serviced without interruption. We have held that an employer cannot "be expected to hold a job open indefinitely." *Smith v. American Indian Chemical Dependency Diversion Project*, 343 N.W.2d 43 (Minn.Ct.App.1984). An employer can, however, reasonably expect an employee to keep it apprised of his whereabouts. Without this information, an employer cannot adequately plan its staffing needs. Wink-

ler failed to meet his employer's reasonable expectations.

We also agree that Winkler's termination was for misconduct. Misconduct has been defined by the Minnesota Supreme Court as follows:

[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct".

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973). Absence from work under circumstances within the control of the employee has been determined to be misconduct sufficient to deny benefits. *See Moeller v. Minnesota Department of Transportation*, 281 N.W.2d 879 (Minn.1979); *Smith v. American Indian Chemical Dependency Diversion Project.*

■ We have held that "[a]bsence from work due to incarceration for criminal acts is misconduct sufficient to disqualify an employee from receiving unemployment compensation benefits." *Smith v. American Indian Chemical Dependency Diversion Project.* In *Smith*, we discussed two Minnesota Supreme Court cases: *Moeller v. Minnesota Department of Transportation* (excessive work absences due to alcoholism) and *Grushus v. Minnesota Mining & Manufacturing Company*, 257 Minn. 171, 100 N.W.2d 516, 517 (1960) (incarceration after plea of guilty). Considering these three cases together with the purpose of the Employment Services Law, it is clear that the general rule that absences from work due to circumstances within the control of the employee are misconduct.

■ As *Moeller* makes clear, an employee need not be absent from work due to incarceration for a criminal conviction to be disqualified from benefits. The critical factor is whether the employee's behavior caused his failure to report to work. Winkler claims his absence was beyond his control because he relied on the advice of his counsel that the attorney would take care of the warrant.

■ The Commissioner stated, "The fact that the claimant apparently relied on the assurances and advice of his attorney is immaterial. The claimant is responsible for his own actions or inactions." We agree. One cannot use the shield of "advice of counsel" if he knowingly disregards a warrant which results in arrest.

By his own admission, Winkler knew there was a warrant outstanding for his arrest and knew that failure to appear is an offense in violation of Mo.Rev.Stat. § 544.-665.

## DECISION

The Commissioner concluded that relator committed three acts constituting misconduct: (1) arrest and incarceration due to his own fault; (2) deceiving his employer about his absence on January 11, 1984; and (3) failing to contact the employer on January 12 and 13, 1984, and from January 14 through 19, 1984.

The record supports the findings of the Commissioner that relator was absent from work due to his own fault and, therefore, was properly disqualified from receiving benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (Supp.1983).

Affirmed.