Joyce DEERING, Relator,

v.

UNITOG RENTAL SERVICES, Respondent, Department of Economic Security, Respondent.

No. C2–85–1783.

Court of Appeals of Minnesota.

Feb. 11, 1986.

William L. Stockman, Coon Rapids, for relator.

Unitog Rental Services, pro se.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., Saint Paul, for Dept. of Economic Sec.

Heard, considered and decided by POPOVICH, C.J. and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Relator, Joyce Deering, appeals by writ of certiorari from a determination that she was discharged for misconduct and was not entitled to unemployment compensation benefits. We reverse.

## FACTS

Joyce Deering worked for Unitog Rental Services until November 1984, when she was discharged due to her poor attendance record. She was rehired by Unitog in February 1985, on the condition that she maintain a perfect attendance record for six

months. Deering signed an agreement that indicated that if she were absent or tardy even once during that six month period, she would be immediately dismissed.

On Thursday, April 25, 1985, Deering picked up her truck from a repair shop. That evening, while driving home from work, she experienced difficulty with the truck's steering mechanism. Despite this problem, she believed she would be able to drive the truck to work the next day. She intended to take the truck back to the repair shop the next day after work.

When she arrived home on Thursday evening, Deering telephoned a friend, and during the course of the conversation complained that her husband had not taken care of the truck repairs. Deering's husband overheard her complaint, became upset, and pulled the wires out of the telephone. That night, unknown to Deering, her husband also pulled the coil wires out of her truck.

On the morning of April 26, Deering was unable to start her truck. At approximately 5:50 a.m. she called Unitog from a neighbor's telephone and explained her problem. She telephoned Unitog again at approximately 7:15 a.m. and spoke to her supervisor, who informed her that she was discharged.

## ISSUE

Did the Commissioner's representative erroneously determine that Deering was discharged for misconduct and was therefore ineligible for unemployment compensation benefits?

## ANALYSIS

■ Unemployment compensation benefits are not awarded to an individual who has been discharged from employment due to misconduct. Minn.Stat. § 268.09, subd. 1(2) (1984). In *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), the Minnesota Supreme Court explained the meaning of the term "misconduct":

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evinc-

ing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Id.* at 374–75, 204 N.W.2d at 646. An employer may be unhappy with an employee's job performance and may perhaps have good cause to discharge that employee; however, whether or not the employee was guilty of "misconduct" disqualifying him or her from the receipt of unemployment compensation benefits is a legal determination. As stated in *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984), "[t]he issue * * * is not whether [the employee] should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well."

Therefore, although the terms of their agreement allowed Unitog to discharge Deering when she was late for work only once, the agreement cannot also define whether or not Deering was guilty of misconduct for unemployment compensation purposes. Indeed, while we sympathize with Unitog's frustration when Deering once again was late for work, we do not believe her actions on Friday morning constituted misconduct under the *Tilseth* standard.

■ It is true that transportation is generally considered the problem of an employee. *See Hill v. Contract Beverages, Inc.*, 307 Minn. 356, 358, 240 N.W.2d 314, 316 (1976); *Priess v. Commissioner of Ec-*

*onomic Security,* 347 N.W.2d 74 (Minn.Ct. App.1984). However, Deering believed that she would be able to drive her truck to work on Friday morning, despite her steering problems on the previous evening. It was her husband's sabotage of the truck, rather than her own actions, which resulted in her lack of transportation that morning. As the referee concluded, it would be unfair to find her guilty of misconduct when, unknown to Deering, her husband had rendered her truck immobile. As we stated in *Winkler v. Park Refuse Service, Inc.,* 361 N.W.2d 120, 124 (Minn.Ct.App.1985), "[t]he critical factor is whether the employee's behavior caused his failure to report to work." *See also Washington v. Amway Grand Plaza,* 135 Mich.App. 652, 658, 354 N.W.2d 299, 302 (1984) ("As a matter of law, tardiness or absences resulting from events beyond the employee's control or which are otherwise with good cause cannot be considered conduct in wilful or wanton disregard of the employer's interests.")

Rather than focusing upon Deering's husband's actions, however, the Commissioner's representative determined that Deering's actions following her discovery of the problem constituted misconduct. In so doing, the Commissioner's representative reversed the Department referee, who had found that Unitog terminated Deering when she called in at 5:50 a.m. to report her problem with the truck. The Commissioner's representative found instead that Deering called in at 5:50 a.m. to explain her problems, that she did not make any immediate arrangements to get to work, and that she was terminated when she called her employer later in the morning. The Commissioner's representative indicated that Deering should have sought alternative means of transportation and that if she had truly wished to retain her job, she could have somehow gotten to work.

▪ Although the Commissioner's findings differ from those of the referee with respect to Deering's telephone calls to Unitog, it is the Commissioner's findings which must be reviewed by the court. *Tester v. Jefferson Lines,* 358 N.W.2d 143, 145 (Minn.Ct.App.1984). There is evidence in the record to support the Commissioner's finding that Deering called her employer at approximately 5:50 a.m., did not make immediate arrangements to get into work, and then called again later in the morning, at which point she was terminated.

Nonetheless, we do not believe that Deering's failure to obtain alternate transportation constituted misconduct. After immediately telephoning her employer, Deering waited for the plant manager to arrive, and then called again to report her trouble directly to him and to ask if she could come in when her truck was repaired. Although a preferable response to the situation might have been to call for a taxi or take a bus to work, under the circumstances Deering's attempt to inform her supervisor of the situation and ask for his patience and understanding evidenced at most an error in judgment which, according to *Tilseth,* does not constitute misconduct.

### DECISION

Although Unitog had the right to discharge Deering for failing to arrive at work on time, her actions in response to her husband's sabotage of her truck did not constitute misconduct. The decision of the Commissioner's representative is reversed.

Reversed.