Mary K. GERR, Respondent,

v.

TARGET–FRIDLEY, Relator,

Commissioner of Economic Security, Respondent.

No. C8–85–1982.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Paul D. Nelson, Joel A. Fisher, Minneapolis, for Mary K. Gerr.

Robert L. Grossman, Minneapolis, for Target–Fridley.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Security.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

This is an appeal from a determination that respondent's absences due to illness did not constitute "misconduct" for purposes of the unemployment compensation laws. We affirm.

## FACTS

Respondent Mary Gerr was hired by relator Target-Fridley in 1969. She has a medical condition known as "hives" (in medical terms "urticaria"), which at various times incapacitates her. Her supervisor was aware of this problem, and in November 1983 Gerr brought in a medical disability statement which documented her condition and indicated that the hives could cause her to miss work from time to time.

In 1983 Gerr missed 27 days of work due to illness, eight of which were due to hives. On December 9, 1983 her supervisor warned her verbally about her excessive absenteeism.

From January until May 24, 1984, Gerr missed several more days of work due to

her illness. It is disputed how many of these absences were due to a flare-up of hives. Consequently, on May 24, 1984 she was given a Phase I warning regarding her absences, which stated:

IMPROVEMENT REQUIRED:

You must not have further attendance/punctuality problems within the next 30 days that are not substantiated by a doctor's statement or provide evidence of extreme extenuating circumstances or further disciplinary action will result. Continued problems after this warning will also result in further disciplinary action.

SUGGESTED IMPROVEMENT METHOD:

If you are experiencing reoccurring medical problems it is suggested you seek medical attention to alleviate excessive sick days. We recommend you consult with your physician and have them communicate to us matters involving your health as it relates to your work as well as the kind of work you are capable of performing.

\* \* \* \* \* \*

FAILURE TO MEET THE ABOVE DEFINED COMPANY REQUIREMENTS WITHIN THE ABOVE SPECIFIED TIME PERIOD OR A REPETITION OF THE SAME CONDUCT WITHIN 6 MONTHS AFTER SUCCESSFULLY COMPLETING THE 30 DAY WARNING PERIOD WILL RESULT IN THE ISSUANCE OF A PHASE II WARNING.

During the following 30 days, (May 24 to June 24, 1984) Gerr did not miss any days of work. However, from June 24 through November 6, 1984, she missed nine days. Again, it is disputed how many of those absences were due to hives. On November 6, 1984 Gerr received a Phase II warning which contained the same language as the Phase I warning, but which changed the 30-day period to 15 days and which indicated that failure to meet the required improvements would result in her discharge.

During the following 15 days, Gerr was not absent from work. On December 4 and 5, 1984 she had the flu, and brought in a doctor's slip, pursuant to the terms of the Phase II warning. In accordance with the "suggested improvement method" in the Phase II warning, Gerr also brought in a letter from her physician on December 12, 1984 which discussed her chronic urticaria and indicated that her physician was modifying her treatment.

Between January 28 and February 4, 1985, Gerr was stricken with gastroenteritis and was absent from work for those five days. Although she again brought in a doctor's slip verifying her illness, she was discharged on February 5, 1985.

Gerr applied for unemployment compensation and a claims deputy awarded her benefits, determining that her last absence was for illness and that no evidence of willful misconduct had been presented. Target appealed and a referee affirmed, determining that her absences did not constitute misconduct. A Commissioner's representative also affirmed, explaining that Gerr had conformed with the requirements of the Phase II warning but had nonetheless been discharged. Target has appealed.

### ISSUE

Did Gerr's absences due to illness constitute disqualifying misconduct, even though she expressly followed her employer's requests by verifying each absence with a doctor's statement?

### DISCUSSION

Employees who are discharged for misconduct are disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.09, subd. 1(2) (1984). The Minnesota Supreme Court defined the term "misconduct" in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973):

[T]he intended meaning of the term misconduct \* \* \* is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in

deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Id.* at 374–75, 204 N.W.2d 646 (quoting *Boynton Cab Co v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 641 (1941)). In *Feia v. St. Cloud State College*, 309 Minn. 564, 244 N.W.2d 635 (1976) the Minnesota Supreme Court also indicated that misconduct may encompass actions "demonstrating a lack of concern by the employee for her job." *Id.* at 565, 244 N.W.2d at 636.

An employer has the burden of proving that an employee was discharged for misconduct. *Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581, 585 (Minn.1977). Once the Commissioner has determined whether or not this burden has been met, appellate review is limited to deciding whether there is evidence in the record which reasonably tends to support the Commissioner's determination. *White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983).

As this court noted in *Smith v. American Indian Chemical Dependency Diversion Project*, 343 N.W.2d 43 (Minn.Ct.App. 1984), "[t]he Minnesota Supreme Court has recognized absenteeism as misconduct." *Id.* at 45, citing *Moeller v. Minnesota Department of Transportation*, 281 N.W.2d 879, 882 (Minn.1979). In *Moeller*, the Minnesota Supreme Court recognized that *behavior* which results from illness *may* constitute misconduct, even if an employee has

no control over the illness. The court found that failure to report to work without notifying the employer constituted misconduct, even though the employee was legitimately ill.

In several instances, the courts have indicated that failure to notify an employer of illness constitutes misconduct. *See* e.g. *Fresonke v. St. Mary's Hospital*, 363 N.W.2d 328 (Minn.Ct.App.1985); *Flahave v. Lang Meat Packing*, 343 N.W.2d 683 (Minn.Ct.App.1984).

These cases are clearly distinguishable, however, because Gerr did notify her employer each time she was going to be absent. The issue here rather, is whether Gerr's absences alone, as a result of chronic illness,[1] constitute misconduct.

Although Minn.Stat. § 268.09, subd. 1(2) (1984) provides that an employee is not disqualified from receiving unemployment compensation benefits if he or she is "separated from employment due to his own serious illness provided that such individual has made reasonable efforts to retain his employment," neither the referee nor the Commissioner's representative relied upon this exception. Both the referee and the Commissioner's representative found that Gerr had not engaged in misconduct since she had complied with her employer's requirements concerning verification and notification of absences due to illness. Target also does not rely upon the serious illness exception, but claims only that excessive absences for *any* reason—even illness—constitute misconduct. Target's arguments fail for two reasons: (1) the case law does not establish that absences due to illness alone constitute misconduct; and (2) Target itself set forth the requirements for Gerr to retain her employment, and Gerr met those requirements.

1. *Absences due to illness do not, alone, constitute misconduct.*

██ The present situation is factually almost identical to *St. Williams Nursing*

---

1. It is undisputed that not all of Gerr's absences were due to a flare-up of hives. However, she did substantiate when requested that she was in fact ill when she was absent. Gerr testified that

chronic urticaria weakens the immune system, making the body more vulnerable to infection. In any event, it is not contested that she was ill when she claimed to be ill.

*Home v. Koep,* 369 N.W.2d 33 (Minn.Ct. App.1985). In *Koep,* this court noted that after being warned against excessive absenteeism the employee had been absent for an additional three days. Each of those absences was due to illness and in each instance the employee properly notified her employer of her absence. Although the employer regarded the employee's absences as sufficient for her discharge, this court stated:

> The issue here is not whether Koep should have been terminated but whether, now that she has been terminated, she should be denied unemployment compensation benefits. * * * An employer's standards for discharging an employee for cause may differ from the misconduct standard enunciated in the economic security law.

In affirming the decision of the referee, the Commissioner stated:

> In the instant case the Referee reasonably found from the evidence that the claimant's absenteeism did not show the culpability required to come within the definition of misconduct * * *.

*Id.* at 34. The *Koep* court affirmed the Commissioner's determination that the employee was not guilty of misconduct.

Here, also, although Target may have been justified in discharging Gerr, the mere fact of her illness does not demonstrate the culpability required by *Tilseth.*

Target claims that our decision in *Jones v. Rosemount, Inc.,* 361 N.W.2d 118 (Minn. Ct.App.1985) indicates that chronic and excessive absenteeism may, as a matter of law, demonstrate a lack of concern for a job. Indeed, this interpretation of *Jones* was recently accepted by this court in *McLean v. Plastics, Inc.,* 378 N.W.2d 104 (Minn.Ct.App.1985). Although *McLean* noted that absenteeism may constitute misconduct despite the fact that there has been no showing of willfulness, the *McLean* court underscored the word *may,* and cited the following passage from *Jones:*

> Although there was no showing that Jones' absenteeism was willful or deliberate, it was sufficiently chronic and exces-

sive to demonstrate a lack of concern by Jones for her job.

> \*    \*    \*    \*    \*    \*

> Regardless of the reason for her absence on her last day of work, Jones' pattern of persistent absence demonstrated negligent behavior toward her employer, justifying termination and justifying withholding unemployment compensation benefits. *Jones,* 361 N.W.2d at 120.

378 N.W.2d at 108.

We must emphasize, however, that even though the *Jones* court found the employee's chronic absenteeism to constitute misconduct as a matter of law, *Jones* also continued to recognize that at least the *Feia* standard of misconduct must be met; i.e., even if willfulness is absent, at least a lack of concern for the employee's job must still be demonstrated. In *Jones,* unlike the present case, there was no evidence of chronic illness by the employee (although the last day of work was missed due to illness). Here, on the other hand, we cannot find that an employee's absences due to documented illnesses demonstrated lack of concern for her job.

The fact that Gerr's illness was not easily controlled is also relevant. In *Winkler v. Park Refuse Service, Inc.,* 361 N.W.2d 120 (Minn.Ct.App.1985), this court indicated that an employee's absences from work due to his incarceration constituted misconduct, since those absences were within the employee's control (he could have paid his fines on time). The *Winkler* court, citing *Moeller,* stated:

> The critical factor is whether the employee's *behavior* caused his failure to report to work.

*Winkler,* 361 N.W.2d at 124 (emphasis added). Cases involving misconduct clearly focus on conduct or behavior. Gerr's illness, rather than any conduct or behavior, caused her failure to report to work.

> 2. *Gerr scrupulously complied with Target's absence/notification requirements.*

■ Misconduct may be judged by determining whether an employee has violated

the standards of behavior which his employer has the right to expect of his employee. *See Tilseth.* As noted above, an employer has the right "to establish and enforce reasonable work rules relating to absenteeism." *Jones,* 361 N.W.2d at 120. However, an employer must also observe its own published policies and procedures.

In *Hoemberg v. Watco Publishers, Inc.,* 343 N.W.2d 676 (Minn.Ct.App.1984) an employer had provided its employees with handbooks indicating that an employee would receive an individual disciplinary warning before being discharged. When the employer did not follow its own rules, the *Hoemberg* court refused to find the employee guilty of misconduct, explaining:

> [T]here is evidence that the employees had notice of the disciplinary procedures in the handbook and had every right to expect the company would follow those procedures.

*Id.* at 679.

In *Hoemberg,* the employee had violated his employer's work rules. In the present situation, Gerr did not violate Target's rules regarding attendance problems but, rather, complied with them fully. Here, even more than in *Hoemberg,* Gerr had the right to expect that her employer would comply with its own agreement.

## DECISION

Gerr's absences from work due to her illness did not constitute misconduct.

Affirmed.