**Reginald L. CHERRY, Relator**

v.

**AMERICAN NATIONAL INSURANCE COMPANY, Commissioner of Jobs and Training, Respondents.**

**No. C1–88–431.**

Court of Appeals of Minnesota.

July 19, 1988.

William Mitchell Law Clinic, Susan K. Wiens, Certified Student Atty., Ann Juergens, Supervising Atty., St. Paul, for relator.

American Nat. Ins. Co., Galveston, Tex., pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Considered and decided by LANSING, P.J., and KALITOWSKI, and SHORT, JJ., without oral argument.

## OPINION

LANSING, Judge.

Reginald Cherry seeks review of a determination that he engaged in misconduct for unemployment compensation purposes. We reverse.

## FACTS

Reginald Cherry began working as a field representative for American National Insurance Company in the fall of 1985. In July 1987, Cherry's car broke down and he could not afford to pay the repair bill. When he still did not have a car by August 28, 1987, Cherry was discharged from his job with American National.

Cherry applied for unemployment compensation benefits, but his claim was denied on the basis that he had engaged in misconduct. Cherry appealed to a referee with the Department of Jobs and Training, who conducted a hearing. At the hearing, Cherry's supervisor testified that he dismissed Cherry because he did not have a car. Cherry testified that he was earning only $145 per week as a field representative, and his repair bill totaled $390. Cherry testified that he was simply unable to pay for the repairs, explaining that his expenses included $255 per month for rent, $101 per month for car payments, and $75 per month for child support.

Cherry also testified that he had attempted to borrow funds to pay for the repairs. He applied at a loan company, which turned down his application because he did not have a co-signer, he unsuccessfully sought a loan from his father and brother, and American National turned down his requests for an advance on his salary, vacation pay or pension.

Following the hearing, the referee determined that Cherry's failure to obtain transportation constituted misconduct, and on appeal, a Commissioner's representative affirmed, reasoning that Cherry's efforts to pay the repair bill were insufficient.

## ISSUE

Did the Commissioner properly conclude that Cherry's failure to obtain transportation constituted misconduct?

## ANALYSIS

An employee is disqualified from receiving unemployment compensation if he was discharged "for misconduct * * * connected with work or for misconduct which interferes with and adversely affects employment." Minn.Stat. § 268.09, subd. 1(b) (Supp.1987).

Misconduct has been defined as:

conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*In re Claim of Tilseth*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).

In reviewing a determination of misconduct, this court must first determine whether there is evidence in the record reasonably tending to sustain the Commissioner's factual findings. *White v. Metro-*

*politan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983). Whether the Commissioner's findings support a determination of misconduct is a question of law, which this court may independently review on appeal. *See Colburn v. Pine Portage Madden Bros., Inc.,* 346 N.W.2d 159, 161 (Minn.1984).

The supreme court has held that the provision of transportation is usually the duty of an employee. *Hill v. Contract Beverages, Inc.,* 307 Minn. 356, 358, 240 N.W.2d 314, 316 (1976). However, that case decided whether an employee had good cause to quit his employment, not whether an employee's failure to provide transportation constituted misconduct. Whether lack of transportation constitutes misconduct was addressed in *Deering v. Unitog Rental Services,* 381 N.W.2d 486 (Minn.Ct.App. 1986). This court determined that intentional acts by an employee's spouse that immobilized the employee's truck did not constitute misconduct because the "critical factor is whether the employee's behavior caused [the] failure to report to work." *Id.* at 488 (quoting *Winkler v. Park Refuse Service, Inc.,* 361 N.W.2d 120, 124 (Minn. Ct.App.1985)).

As *Deering* suggests, the question of law under *Tilseth* is whether Cherry's behavior caused his failure to obtain necessary transportation. The Commissioner's representative found that Cherry did not testify that he made any efforts to get a co-signer for a loan. Cherry did testify that he did not know anyone who would co-sign a loan for him. The Commissioner also stated:

> Since much of [Cherry's] testimony consisted of complaints about his reduced income and the poor sale prospects in his assigned territory and the dangers inherent in such a high crime area, we reasonably conclude that [Cherry] was dissatisfied with his job and its location and that he did not make reasonable efforts to redeem his car simply because he really did lack concern for his job.

However, the only testimony Cherry offered relating to the high crime area was solicited by Cherry's attorney on direct examination to explain why Cherry's income was so low and why he had no money to pay his car repair bill.

The Commissioner's representative noted that Cherry had not made any efforts to contact a second financial institution or other individuals for a loan. Cherry testified that he asked his father and his brother to loan him the money, but his requests were denied. He also asked his employer for an advance on his salary, vacation pay, or pension plan, which requests were denied. It is doubtful that a request to another financial institution for a loan would have proved fruitful; Cherry's expenses for rent, car payments, and child support totaled $431, and his income from his job with American National was only $145 a week, or approximately $580 per month.

The record demonstrates that Cherry made a sufficient effort to redeem his car, and that his inability to obtain transportation resulted from his poverty, not his misconduct. His inability to pay the repair bill was not in willful or wanton disregard of American National's interests, nor did his lack of funds evince a lack of concern for American National's interests.

The policy of the unemployment compensation statutes is to provide benefits to those persons unemployed through "no fault of their own." Minn.Stat. § 268.03 (1986). Cherry made reasonable efforts to retain his field representative position, but simply had no money to pay his bill. The Commissioner erred by characterizing Cherry's inability to pay a bill as "misconduct."

### DECISION

Reversed.