*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1418**


Amanulah Dharsee,
Relator,

vs.

Rubber Industries, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.


**Filed March 16, 2015
Affirmed
Bjorkman, Judge**


Department of Employment and Economic Development
File No. 32350389-3

Amanulah Dharsee, Bloomington, Minnesota (pro se relator)

Julie A. Doherty, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, Minnesota (for respondent Rubber Industries, Inc.)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Cleary, Chief Judge; Bjorkman, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relator challenges the unemployment-law judge's (ULJ) determination that he is ineligible for unemployment benefits, arguing that he did not have a fair hearing and that the ULJ erred in finding that he quit his employment. We affirm.

## FACTS

In early December 2013, relator Amanulah Dharsee was burned while working as a machine operator for respondent Rubber Industries, Inc. At the time of the injury, Dharsee's doctor concluded that he would be unable to return to work for at least three weeks. Rubber Industries contacted Dharsee to discuss the circumstances of his injury and received a copy of the doctor's initial report. In late December, Dharsee provided Rubber Industries with a second doctor's note indicating he would be unable to return to work for another three weeks. Rubber Industries asserts that this was the last communication it received from Dharsee.

Following a third appointment, Dharsee's doctor concluded that he was still unable to return to his former position but possibly able to do light-duty work. Dharsee contends that others contacted Rubber Industries on his behalf and learned that no light-duty work was available. In February 2014, Dharsee applied for unemployment benefits, asserting that he had been discharged from his employment. Rubber Industries concluded that Dharsee quit when it received notice of his application for benefits.

Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Dharsee is ineligible for benefits because he voluntarily

terminated his employment. Dharsee appealed this determination. An evidentiary hearing was scheduled for April 29, 2014. Dharsee was represented by a lawyer at this initial hearing. At her own initiative, the ULJ continued the hearing until May 8 so Dharsee could obtain an interpreter. Dharsee's sister, Zahara Amir, served as interpreter. A law clerk affiliated with Dharsee's lawyer represented Dharsee at the May 8 proceeding. Both Dharsee and Amir testified; Matthew Maunu and Donald Grimm testified on behalf of Rubber Industries. The ULJ determined that Dharsee quit his employment, and therefore is ineligible for benefits. Dharsee requested reconsideration, and the ULJ affirmed. Dharsee brings this certiorari appeal.

## D E C I S I O N

This court may reverse the decision of a ULJ "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are . . . unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (2014). We review the ULJ's factual findings in the light most favorable to the decision and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Dharsee contends that he was deprived of a fair hearing because he did not have a qualified interpreter and because the ULJ failed to assist him even though he was not represented by a lawyer. He also generally asserts that the ULJ erred by finding that he quit his job. We address each argument in turn.

3

**I.      Dharsee was not deprived of a fair hearing because he lacked a qualified interpreter.**

A ULJ is required to "provide an interpreter, when necessary, upon the request of a party." Minn. R. 3310.2911 (Supp. 2014). And a ULJ must "continue any hearing where a witness or party needs an interpreter in order to be understood or to understand the proceedings." *Id.*

Dharsee asserts that he was deprived of a fair hearing because the interpreter he chose was not qualified. We are not persuaded. Despite Dharsee's and his lawyer's repeated assertions that Dharsee did not need an interpreter, the ULJ continued the evidentiary hearing so he could obtain one. Dharsee selected Amir, and neither he nor his representative requested an alternative interpreter. Our review of the transcript reveals Dharsee was fully able to respond to questions and participate in the hearing. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 530 (Minn. App. 2007) (finding relator's substantial rights were not prejudiced when she did not request interpreter and record did not indicate she did not understand the proceedings or that ULJ did not understand her). Moreover, Dharsee could have but did not raise this issue in his request for reconsideration. On this record, we conclude Dharsee was not deprived of a fair hearing because he lacked a qualified interpreter.

**II.      Dharsee was not deprived of a fair hearing.**

A ULJ is obligated to "assist all parties in the presentation of evidence." Minn. R. 3310.2921 (Supp. 2014). Dharsee argues the ULJ did not meet this obligation, citing his lack of representation at the hearing. We disagree. A representative, apparently a law

4

clerk affiliated with Dharsee's lawyer, actively participated in the proceeding, examining witnesses and making a closing argument on Dharsee's behalf. Dharsee never informed the ULJ that his representative was not an attorney.

Even if Dharsee had no legal representation at the hearing, the record demonstrates that the ULJ fully satisfied her statutory obligations. The ULJ asked questions to develop the record and sought clarification whenever necessary. Based on our review of the record, we discern no reason to conclude that the ULJ conducted the hearing in a manner that impaired Dharsee's rights.

### III. Substantial evidence supports the ULJ's finding that Dharsee quit his job.

A person who quits employment is disqualified from receiving unemployment benefits unless a statutory exception applies. Minn. Stat. § 268.095, subd. 1 (2014).[1] A quit "occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). A discharge occurs "when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." *Id.*, subd. 5(a) (2014). Generally, "[w]hether an employee has been discharged or voluntarily quit is a question of fact." *Midland Elec., Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn. App. 1985). We will not disturb the ULJ's factual findings when the evidence substantially sustains them. *Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

---

[1] Dharsee challenges the ULJ's finding that he quit but he does not contend that any statutory exceptions apply.

5

The parties presented conflicting accounts of what occurred following Dharsee's December 2013 injury. Dharsee and Amir testified that throughout January Dharsee and others acting on his behalf contacted Rubber Industries many times regarding his employment situation, including Dharsee's availability for light-duty work. According to this testimony, production manager Donald Grimm told Dharsee, Amir, or Dharsee's unidentified friend that no light-duty work was available and the company did not want to risk bringing Dharsee back. Dharsee stated that he interpreted this to mean that he had been discharged. In contrast, Rubber Industries representatives Grimm and Maunu both testified that Dharsee last contacted Rubber Industries in late December, and light-duty work was available but Dharsee never requested it.

The ULJ credited Rubber Industries' version of events over Dharsee's, explaining that "the employer's testimony was more credible because it was consistent and detailed in nature," while Dharsee's testimony was "less consistent and less detailed in nature." We defer to such credibility determinations, *Skarhus*, 721 N.W.2d at 344, and the record supports the ULJ's assessment of the parties' testimony. While Grimm and Maunu both consistently testified that Dharsee did not contact the company after December, Dharsee did not provide a consistent description of who contacted the company, with whom they spoke, and when those contacts occurred. At times, Dharsee claimed he initiated contact with Rubber Industries in January, while at other points he testified only his friend and Amir contacted the company. Dharsee's friend did not testify and was never identified by name. At one point, Dharsee stated his friend left a message with "HR," but later he testified that his friend actually spoke with Grimm, who told her there was no light-duty

6

work available. Amir testified that she was the one who spoke with Grimm in January and was informed no light-duty work was available. In short, these inconsistencies provided the ULJ with a sufficient basis to discount Dharsee's account of events, and credit Grimm and Maunu's testimony that Dharsee last contacted the company in December.

We have observed that an employee's extended lack of contact with his employer supports a finding that the employee quit. *See*, *e.g.*, *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594-95 (Minn. App. 2006) (upholding ULJ's finding that relator quit when she failed to contact or return to work after two days); *Winkler v. Park Refuse Serv., Inc.*, 361 N.W.2d 120, 123 (Minn. App. 1985) (stating that "an employer cannot be expected to hold a job open indefinitely" and can "reasonably expect an employee to keep it apprised of his whereabouts") (quotation omitted). Grimm and Maunu's testimony that Dharsee was still considered an employee and enrolled in the company's benefits plan at the time he applied for unemployment benefits supports the ULJ's finding that he was not discharged, but decided to end his employment. On this record, we conclude that substantial evidence supports the ULJ's finding that Dharsee quit his employment.

**Affirmed.**