## HAROLD GRUSHUS AND ANOTHER v. MINNESOTA MINING & MANUFACTURING COMPANY.

100 N. W. (2d) 516.

January 8, 1960—No. 37,803.

*Thomas J. Lyons* and *Charlton Dietz,* for relator.

*Miles Lord,* Attorney General, and *George C. Gubbins, Jr.,* for respondent commissioner.

MURPHY, JUSTICE.

This case comes to us on certiorari from the Department of Employment Security for review of its determination that Harold Grushus should receive unemployment compensation under the Employment Security Act, M. S. A. c. 268, and that benefits thereunder should be charged to the experience rating account of the employer, Minnesota Mining & Manufacturing Company.

The claimant was employed by that company for a period of approximately 7 years. On January 3, 1958, he was laid off for lack of work. Thereafter he applied for and received unemployment compensation. On August 19, 1958, he was recalled to work pursuant to

the company's contract with the claimant's union.[1] At the time the notice was sent to the claimant, he was incarcerated awaiting arraignment on a charge of burglary and larceny. He thereafter entered a plea of guilty, and by sentence imposed September 3, 1958, he was sentenced to 4 years imprisonment. The sentence was suspended and he was placed on probation. When the notice from the company came to the claimant's home, his wife wrote and told the employer that she was unable to contact her husband because he was on the road selling. She asked for an extension of time within which he could report for work. An extension was granted until August 29, 1958. On the latter date she requested a further extension.

It was not until September 2, 1958, or thereabouts, that the company learned of claimant's incarceration and the reasons therefor. When the claimant's wife called the company on September 2, they informed her that his employment had been terminated for failure to report for work when recalled. He was released from jail on September 9, 1958. It is agreed that the claimant was not entitled to benefits during the time he was in jail.

On the facts stated, the Department of Employment Security determined that the claimant's incarceration did not disqualify him from receiving benefits subsequent to his release from legal custody. It therefore held that if any benefits were to be paid they would be charged to the company's experience rating account.[2] The company appealed from this ruling.

---

[1]Section 8.03(d) of that contract provides: "Seniority shall terminate for the following reasons:

\* \* \* \* \*

"d. Failure to report to work after layoff within five working days after being notified by registered letter (return receipt requested) at the employee's last available address, unless satisfactory reason is given. A copy of the written offer shall be sent to the Union."

[2]The experience rating account is the method by which the department must compute the amount the employer is to contribute to the unemployment trust fund. M. S. A. 268.06, subds. 1, 6, 8. The employer's experience rating account increases in proportion to the number of employees discharged from employment due to reasons not covered by the disqualification provisions of § 268.09. See, § 268.06, subd. 6.

We think that the particular part of the statute which has application to the facts before us is § 268.09, subd. 1, which deals with the subject of disqualification and provides:

"An individual shall be disqualified for benefits:

\* \* \* \* \*

"(5) If the commissioner finds that he has *failed, without good cause,* either to apply for available, suitable work when so directed by the employment office, or the commissioner or *to accept suitable work when offered him,* or to return to his customary self-employment (if any) when so directed by the commissioner. Such disqualification shall continue for the week in which such refusal or failure occurred and for a period of three weeks of unemployment immediately following such refusal or failure." (Italics supplied.)

The state claims that this particular section is not applicable, because the employee did not in fact fail "without good cause" to accept suitable work when offered him. They say that he was "physically incapable of accepting suitable work" and that he could "neither reject nor accept it." The state would limit consideration of the issues to the application of § 268.08, which is concerned with "eligibility."[3] They argue that the

---

[3]M. S. A. 268.08, subd. 1, provides: "An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

"(1) He has registered for work at and thereafter has continued to report to an employment office, or agent of such office, in accordance with such regulations as the commissioner may prescribe; except that the commissioner may by regulation waive or alter either or both of the requirements of this clause as to types of cases or situations with respect to which he finds that compliance with such requirements would be oppressive or would be inconsistent with the purposes of sections 268.03 to 268.24;

"(2) He has made a claim for benefits in accordance with such regulations as the commissioner may prescribe;

"(3) He was able to work and was available for work, provided that individual's weekly benefit amount shall be reduced one-fifth for each day such individual is unable to work or unavailable for work;

"(4) He has been unemployed for a waiting period of one week during which he is otherwise eligible for benefits under sections 268.03 to 268.24.

employee could not be "disqualified" because at the time he was offered his old job he was not "eligible" to receive benefits. This argument stems from the particular language used in § 268.08. As one of the conditions to receiving benefits, that section of the statute provides that the employee must be "able to work and * * * available for work, * * *." The state deduces from this that because of the employee's incarceration he was neither "able to work" nor "available for work" and that during the period of his incarceration he was consequently "ineligible" for benefits and because of his status while so detained he could not be "disqualified." The parties cite Swanson v. Minneapolis-Honeywell Regulator Co. 240 Minn. 449, 61 N. W. (2d) 526; Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. (2d) 815; Thompson v. Schraiber, 253 Minn. 46, 90 N. W. (2d) 915; and Beaman v. Safeway Stores, Inc. 78 Ariz. 195, 277 P. (2d) 1010, in which various provisions of the Employment Security Act are discussed. We do not think these authorities are of aid in determining the particular issue before us. It seems to us that whether the employee became "ineligible" for benefits or was "disqualified" from receiving benefits is one and the same thing as applied to the facts in this case. In either event the cause of his disability is the same. At the time of his incarceration he became "ineligible" for benefits; because of his incarceration he became "disqualified."

It is our view that this issue turns upon an interpretation of § 268.09, subd. 1(5). This statute sets down in general terms the criteria under which an individual may be disqualified for benefits. It does not spell out precisely all the various circumstances which may occur in the employer-employee relationship which may come within the intent and meaning of the act. We are required in the interpretation of statutes to attempt to discover and effectuate the legislative intent, to consider the objects which the legislature seeks to accomplish by the statute and the mischief to be remedied; and to avoid a result which would be absurd or do violence to the language of the statute. Wichelman v.

No individual shall be required to serve a waiting period of more than one week within the one year period subsequent to filing a valid claim and commencing with the week within which such valid claim was filed."

Messner, 250 Minn. 88, 83 N. W. (2d) 800; 17 Dunnell, Dig. (3 ed.) § 8940(2); M. S. A. 645.16. Moreover, we cannot ignore the statement of public policy contained in § 268.03 of the act to the effect that its purpose is to alleviate unemployment and attendant social consequences by the compulsory setting aside of unemployment reserves to be used "for the benefit of persons unemployed *through no fault of their own.*" (Italics supplied.) That section also provides that this statement of public policy is to be used "As a guide to the interpretation and application of sections 268.03 to 268.24, * * *."[4]

We have not been cited to any case in this or other jurisdictions involving a similar set of facts. There appears to be authority[5] to the effect that the Michigan court might sustain the position taken by the state, although the Michigan act (Mich. Stat. Ann. 1950 Rev. § 17.502), unlike § 268.03, does not contain the explicit direction that the stated public policy shall be a "guide to the interpretation and application" of the Employment Security Act. On the other hand, there are Pennsylvania authorities[6] which hold that public policy must be considered in determining eligibility for compensation in every case and that public policy negatives the conclusion that an employee "shall receive compensation for the unemployment which resulted from his own criminal act."

Viewing the language of § 268.09, subd. 1(5), in the light of recognized canons of construction and the public policy declared by the legislature, it appears to us that that section applies to the facts before us. On August 19, 1958, the employee had been recalled to work by his employer. He was unable to accept because of his incarceration for the commission of an offense to which he entered a plea of guilty. During the time of his incarceration he was offered suitable work.

[4]Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. (2d) 815; Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 142, 38 N. W. (2d) 223, 230.

[5]Michigan Employment Security Comm. v. Appeal Board, 356 Mich. 665, 97 N. W. (2d) 784.

[6]See, Dept. of Labor and Industry v. Unemployment Comp. Board, 148 Pa. Super. 246, 248, 24 A. (2d) 667, 668; Michalsky Unemployment Comp. Case, 163 Pa. Super. 436, 62 A. (2d) 113.

His failure to accept the work was due to his own fault. The fact that he may not have intended to disqualify himself is not determinative. His illegal act resulting in his arrest and incarceration was the cause of his failure "to accept suitable work when offered him." It cannot be reasonably said that this was a "good cause" for failure to accept work. A practical application of the facts compels the conclusion that the cause for failure to respond to the offer of work was not a "good cause" and that such failure can be attributed only to the employee's "fault." This is the determinative consideration in an inquiry as to whether the employer's experience rating account should be charged. Under the circumstances of the case before us there was no obligation on the part of the employer to keep the job open until such time as the employee might be released from custody, nor do we think that the legislature intended that under such circumstances benefits claimed by an employee should be used as a factor in determining the employer's future contribution rate.

It is argued that the holding we adopt will place an unreasonable burden upon the Department of Employment Security by requiring it to determine whether the unemployment resulted from the employee's "fault." It is true that situations may occur where an employee is illegally detained by prosecuting authorities or where after a lengthy incarceration he may be released without prosecution or his innocence finally determined. However, such situations must remain for determination upon the facts in each particular case, and the commissioner is left with the responsibility of finding the facts as to "good cause" and "fault" within the intent and purpose of the act.

Reversed.