**Elroy SMITH, Relator,**

v.

**AMERICAN INDIAN CHEMICAL DEPENDENCY DIVERSION PROJECT, Respondent,**

and

**Commissioner of Economic Security, Respondent.**

No. CX–83–1588.

Court of Appeals of Minnesota.

Jan. 25, 1984.

Edward Rooney, Mirviss, Seltz & Rooney, P.A., Minneapolis, for relator.

Frank Levin, Minneapolis, for respondent American Indian Chemical Dependency Diversion Project.

Hubert H. Humphrey, III, Atty. Gen., Paul Heckt, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator Elroy Smith was fired for a three day unexcused absence resulting from his incarceration for failure to pay a traffic ticket. The Department of Economic Security found that Smith was discharged for misconduct and denied him unemployment compensation benefits. This court granted certiorari. We affirm.

## FACTS

Smith worked for the American Indian Chemical Dependency Diversion Project (AICDDP). He had a record of unexcused tardiness and absences, and had been warned that additional instances would result in discipline.

On April 4, 1983, he was arrested under a bench warrant issued by the Morrison County Court. The warrant was for failure to pay a speeding ticket issued to Smith in February 1983. Smith was transported to the Morrison County jail that night, appeared in court the next morning, and was fined $188. He was released from jail on April 7, 1983, after his father loaned him money to pay the fine. He missed three days of work because of his incarceration.

When Smith returned to work on April 8, 1983, he received written notice that he was suspended because he had been absent without leave on April 5, 6 and 7. The suspension was made permanent on May 4, 1983.

Smith applied for unemployment compensation benefits. The claims deputy, an appeals tribunal and the commissioner's representative all found that Smith's three day absence during his incarceration was misconduct which disqualified him from receiving unemployment benefits.

## ISSUE

Is a three-day unexcused absence from work caused by an employee's incarceration for failure to pay a speeding ticket misconduct sufficient to disqualify the employee for unemployment compensation benefits?

## ANALYSIS

■ The standard of review in unemployment compensation cases is limited. Findings must be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

■ Under Minnesota's economic security laws, an employee fired for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09(1) (1982). Misconduct, as a disqualification, is to be narrowly construed. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981). The employer has the burden of proving misconduct. *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 585 (Minn.1977).

> The Minnesota Supreme Court has held: The test of whether activity constitutes misconduct for purposes of disqualification from unemployment compensation benefits is whether it is in wilful disregard of an employer's interest
>
> —the disregard of standards of behavior which the employer has a right to expect of his employee. *Auger v. Gillette Co.*, 303 Minn. N.W.2d 255, 257 (Minn.1981)
>
> [T]he intended meaning of the term "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the oth-

er hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct." *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973)

This court has applied the *Tilseth* standard in misconduct cases such as *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294 (Minn.App.1983) and *King v. Little Italy*, 341 N.W.2d 896 (Minn.App.1984).

Smith urges us to find that missing three days of work because of "an old traffic offense, completely unrelated to his employment" falls short of disqualifying misconduct. He contends that he did everything he could to protect his employer's interests by notifying his employer immediately that he was in custody and by returning to work as soon as he was released.

The argument is unpersuasive. The Minnesota Supreme Court has recognized absenteeism as misconduct. *Moeller v. Minnesota Department of Transportation*, 281 N.W.2d 879, 882 (Minn.1979), held that an alcoholic's failure to report for work or to notify his employer was misconduct within the meaning of Minn.Stat. § 268.09, subd. 1(2), even though the failure resulted from an illness over which the employee had no control.

Furthermore, public policy prohibits treating illegal failure to pay speeding tickets as ordinary negligence or inadvertance. Smith's unavailability for work due to his incarceration amounted to disregard of attendance standards which his employer had a right to expect him to obey.

*Grushus v. Minnesota Mining and Manufacturing*, 257 Minn. 171, 100 N.W.2d 516 (1960) dealt with the effect of incarceration upon an individual's eligibility for unemployment compensation benefits in a slightly different context. In *Grushus*, an employee who was laid off was convicted of burglary and larceny. He was offered his old job back, but was unable to go back to work because he was incarcerated.

The Department of Economic Security determined Grushus should continue to receive benefits. The department found that Grushus had good cause for not accepting suitable work offered him: he was "physically incapable of accepting suitable work" and could "neither reject nor accept it." *Grushus*, 100 N.W.2d at 518.

The Minnesota Supreme Court reversed. It noted that the statement of public policy in Minn.Stat. § 268.03 dictates that unemployment reserves be used "for the benefit of persons unemployed *through no fault of their own.*" *Grushus*, 100 N.W.2d at 519 (Emphasis in original) The court found:

... His failure to accept the work was due to his own fault. The fact that he may not have intended to disqualify himself is not determinative. His illegal act resulting in his arrest and incarceration was the cause of his failure 'to accept suitable work when offered him.' It cannot be reasonably said that this was a 'good cause' for failure to accept work. A practical application of the facts compels the conclusion that the cause for failure to respond to the offer of work was not a 'good cause' and that such failure can be attributed only to the employee's 'fault.'

... Under the circumstances of the case before us there was no obligation on the part of the employer to keep the job open until such time as the employee might be released from custody.

The same reasoning applies in this case. Smith obviously did not intend to disqualify himself for unemployment benefits by failing to pay his speeding tickets. But his incarceration for failure to pay made him unavailable for scheduled work. AICDDP had the right to expect Smith to work when scheduled, and could not be expected to hold his job open indefinitely while he raised money to pay his fine.

## DECISION

To grant Smith benefits would undermine the state policy of using unemploy-

ment reserves for the benefit of persons unemployed through no fault of their own. Absence from work due to incarceration for criminal acts is misconduct sufficient to disqualify an employee from receiving unemployment compensation benefits.

Affirmed.