747 N.W.2d 367 (2008)
Richard A. CARLSON, Relator,
v.
DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.
No. A07-28.
Court of Appeals of Minnesota.
April 15, 2008.
*369 Richard A. Carlson, Bloomington, MN, pro se relator.
Lee B. Nelson, Katrina I. Gulstad, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent.
*370 Considered and decided by KLAPHAKE, Presiding Judge; HALBROOKS, Judge; and SCHELLHAS, Judge.

OPINION
SCHELLHAS, Judge.
In this certiorari appeal from an unemployment-law judge's decision of ineligibility for unemployment benefits, relator argues he was eligible for benefits while he served his felony DWI sentence in a correctional facility and while on electronic home monitoring (EHM). Despite the provision of Minn.Stat. § 268.085, subd. 2(3) (2006), that one who is incarcerated is not eligible for unemployment benefits, relator contends that he was eligible because he was available for work and was looking for work during his incarceration and while he served part of his sentence on EHM.

FACTS
Relator Richard A. Carlson became unemployed in September 2005. On November 4, 2005, he was charged with his fifth alcohol-related driving offense, a felony DWI. Effective November 11, 2005, he established an unemployment-benefits account. On April 7, 2006, after pleading guilty to a felony DWI, relator, who was still unemployed, was sentenced to one year and one day of incarceration to be served at the Hennepin County correctional facility.
When he was released from the correctional facility, relator was required to serve the balance of his sentence under house arrest, subject to EHM. Relator could leave his home only for activities approved by the sentencing judge. Relator had approval to work up to six days per week, if he could obtain employment. To obtain permission to attend an interview, relator would call his attorney, who would then contact the sentencing judge. If permission was granted, the judge would give written notice to the correctional facility by facsimile transmission. Obtaining permission took 24-48 hours. About one month after his release from the correctional facility, relator was hired by a mortgage company. He began his new employment on July 30, 2006.
Throughout the time that relator was incarcerated at the correctional facility and then on EHM, relator reported to respondent that he was not employed, he was seeking work, and he was available for work. Relator sought and obtained unemployment benefits for both periods. Respondent later determined that relator was not eligible for unemployment benefits because he was incarcerated, basing that determination on Minn.Stat. § 268.085, subd. 2(3) (2006). Relator appealed that determination, arguing that because he was available for work and was eligible for work-release privileges, he was entitled to benefits, even while incarcerated. The unemployment-law judge affirmed the determination that relator was ineligible. Relator's request for reconsideration was denied and this appeal followed.

ISSUE
Is an applicant for unemployment benefits, who is eligible for work-release privileges while serving a statutory minimum sentence of at least one year of incarceration, "incarcerated" and ineligible for benefits while serving time in a local correctional facility and while subject to electronic home monitoring?

ANALYSIS
This court may affirm, remand, reverse, or modify the decision of an unemployment-law judge (ULJ), if the substantial *371 rights of the relator may have been prejudiced because the findings, conclusion, or decision are, among other things, affected by an error of law or unsupported by substantial evidence. Minn.Stat. § 268.105, subd. 7(d)(4), (5) (Supp.2007).
Questions of law are reviewed de novo; findings of fact are upheld if they are supported by substantial evidence. Ywswf v. Teleplan Wireless Servs., Inc., 726 N.W.2d 525, 529 (Minn.App.2007). Whether the decision was proper is a question of law reviewed de novo. Jenkins v. Am. Express Fin. Corp., 721 N.W.2d 286, 289 (Minn.2006) (citing Ress v. Abbott Nw. Hosp., Inc., 448 N.W.2d 519, 523 (Minn. 1989)).
Unemployment insurance and benefits are governed by Minnesota Statutes, sections 268.001-.23 (2006). The section at issue in this case is 268.085 (2006). That section establishes "eligibility conditions," for those seeking unemployment benefits. Minn.Stat. § 268.085, subd. 1. Among other requirements, an applicant must be "able to work," be "available for suitable employment," and be "actively seeking suitable employment." Id., subd. 1(4). The next subdivision describes those who are "not eligible" for benefits. Id., subd. 2. Included in this subdivision are those who are "incarcerated or performing court ordered community service." Id., subd. 2(3). If an applicant is "unable to work or is unavailable," or if the applicant "is incarcerated," weekly benefits are reduced by one-fifth for each day that the applicant is not eligible for benefits. Id., subds. 1(4), 2(3).
The critical issue is whether relator was "incarcerated" during the periods in question, within the meaning of Minn.Stat. § 268.085, subd. 2(3). Statutory interpretation is a question of law, which we review de novo. Houston v. Int'l Data Transfer Corp., 645 N.W.2d 144, 149 (Minn.2002). We must ascertain and give effect to legislative intent and, if possible, construe the statute "to give effect to all its provisions." Minn.Stat. § 645.16 (2006).
Words and phrases in a statute are to be construed according to their plain and ordinary meaning. Am. Family Ins. Group v. Schroedl, 616 N.W.2d 273, 277 (Minn.2000). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." Hans Hagen Homes, Inc. v. City of Minnetrista, 728 N.W.2d 536, 539 (Minn.2007); see also Minn.Stat. § 645.16 (providing that when the language of a statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). A statute is ambiguous only if its language is subject to more than one reasonable interpretation. Am. Family Ins. Group, 616 N.W.2d at 277. The threshold question is whether the statutory reference to an applicant who is "incarcerated" is unambiguous.
The term is not defined within chapter 268. Various other Minnesota statutes refer to "incarceration" and "incarcerated" persons, but none provides an explicit definition for these terms. Minn.Stat. § 609.135, subd. 1(b) (2006), defines "intermediate sanctions" to imprisonment, including incarceration in a local facility, "home detention, electronic monitoring, intensive probation, sentencing to service," community work service, and other alternatives. The statute under which relator was sentenced requires "a minimum of one year of incarceration, at least 60 days of which must be served consecutively in a local correctional facility." Minn.Stat. § 169A.275, subd. 4(a)(1) (2006). It does *372 not specify where the balance of the "one year of incarceration" is to be served.
Dictionary definitions may be helpful, especially if they are consistent. Cf. Houston, 645 N.W.2d at 150 (comparing similar dictionary definitions and interpreting unemployment statute on disqualification from benefits, due to misconduct). Blacks Law Dictionary defines "incarceration" as "[t]he act or process of confining someone," and "confinement" as "the state of being imprisoned or restrained." Blacks Law Dictionary 775, 318 (8th ed.2004). Under these definitions, incarceration is dependent on restraint and confinement, but not on the nature of the facility in which that restraint occurs. Blacks defines "house arrest" as the "confinement of a person . . . to his or her home, usually by attaching an electronically monitored bracelet." Id. 756. Because both incarceration and house arrest are characterized by confinement, it would be logical to infer that incarceration includes house arrest. But other dictionaries define "incarcerate" in a manner that does not necessarily include house arrest: "to put in jail, to shut in; [to] confine." The American Heritage College Dictionary 700 (4th ed.2007). Accordingly, we conclude that the term "incarcerated" is ambiguous.
When the language of a statute is ambiguous or "not explicit," we must ascertain legislative intent, considering the purpose of the law, its legislative history, and any existing legislative or administrative interpretations. Minn.Stat. § 645.16. Statutory provisions governing unemployment benefits are to be liberally construed in favor of those unemployed through no fault of their own, and disqualification provisions are to be narrowly construed. Jenkins, 721 N.W.2d at 289; see also Minn. Stat. § 268.03, subd. 1 (2006) (declaring public purpose of unemployment insurance). Courts may "accord substantial consideration" to administrative interpretations by the responsible agency, especially when the statutory language is highly technical. J.C. Penney Co. v. Comm'r of Econ. Sec., 353 N.W.2d 243, 246 (Minn. App.1984) (quotation omitted). An administrative determination is entitled to greater weight if it is of longstanding duration. In re Claim by Meuleners, 725 N.W.2d 121, 123 (Minn.App.2006). Respondent's interpretation of "incarcerated" to include those serving time at a local correctional facility is well established, but the record does not establish the existence of a longstanding policy of treating applicants subject to EHM, but eligible for work-release privileges, as "incarcerated."
For three reasons, we conclude that relator was "incarcerated" and ineligible for benefits during the time that he was in a local correctional facility and while he was subject to EHM.
First, the statute under which relator was sentenced requires "a minimum of one year of incarceration." Minn.Stat. § 169A.275, subd. 4(a). It is undisputed that relator was subject to that sentence during the entire period for which he sought benefits. When a term is not defined in the statute being interpreted, it is appropriate to "consider other statutes relating to the same subject matter as far as they shed light on the question." Hahn v. City of Ortonville, 238 Minn. 428, 436, 57 N.W.2d 254, 261 (1953) (considering the use of "person" in other statutes, to determine whether it included municipal corporations). It is clear that the sentencing statute includes time spent in a local correctional facility and time after release from that facility in its reference to the one-year minimum period of incarceration. Interpreting the same term in the unemployment statute to include the entire duration *373 of the applicant's sentence ensures consistency.
Second, we must interpret the term "incarceration" in context, as it relates to whether the applicant was "available for suitable employment." See Minn. Stat. § 268.085, subd. 1(4) (requiring that applicant be "available" as a condition of eligibility for benefits). Availability for suitable employment requires both the applicant's willingness to accept work in the labor market and that there "be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent [the applicant from] accepting employment." Minn.Stat. § 268.085, subd. 15(a) (emphasis added). While incarcerated at the correctional facility, relator was subject to multiple restrictions, including the inability to attend interviews without obtaining written permission, the requirement that he plan interviews at least one week in advance (because the approval process took that long), the inability to receive incoming telephone calls, and the inability to apply for work in person. Once he was on EHM, relator was still required to obtain written approval to attend interviews or to leave his home, he could not work more than six days per week, and he was required to wear an electronic monitoring bracelet. Thus, relator was subject to numerous restrictions that affected his availability for work. Although those restrictions were temporary, and relator eventually obtained new employment, the statute specifically requires that there be "no . . . restrictions," including "temporary" ones. See id. Because relator's availability for suitable work was subject to numerous restrictions, we conclude that he was both "incarcerated" and "unavailable" for work throughout the period in dispute.
Third, it is clear that the legislature intended to link the concepts of availability for work and incarceration. In 1997, the statute was amended to provide that applicants who are incarcerated are "not eligible" for unemployment benefits. 1997 Minn. Laws ch. 66, § 37. In 1999, the statute was amended to provide that applicants who are performing court-ordered community service also are "not eligible" for benefits. 1999 Minn. Laws ch. 107, § 42. (The statute has since been renumbered, and these provisions now appear in Minn.Stat. § 268.085, subd. 2(3).) At the time, an administrative rule provided that an incarcerated applicant who was "unable to accept employment under a work release program is not available for work." Minn. R. 3305.0500, subp. 7 (1997). Arguably, the reverse inference that might be drawn from the rule is that an incarcerated applicant for benefits who is eligible for a work-release program might qualify as "available" for employment, although there are no reported cases establishing that the rule was applied in that manner. In 1999, the legislature repealed that rule. 1999 Minn. Laws ch. 107, § 67. At the same time, the legislature rewrote section 268.085, so that it now "addresses many of the subjects [formerly] addressed by chapter 3305 [of the Minnesota Rules]." Mueller v. Comm'r of Econ. Sec., 633 N.W.2d 91, 93 (Minn.App.2001). But the legislature did not choose to include in the revised statute all of the exceptions that had been set forth in the administrative rules. See id. (noting failure to incorporate into the revised statute a provision that an applicant whose physical or mental condition restricts availability to do full-time work may, nonetheless, be eligible for benefits). For this court to construe section 268.085 to include an exception previously set forth in an administrative rule would in effect modify the statute. And that is unauthorized. See State v. Fleck, 281 Minn. 247, 252, 161 N.W.2d 309, 312 (1968) *374 (concluding that it must be assumed that, had the legislature desired to expand upon a statutory section, it would have effectuated this desire by amending that section).
There is a general presumption that the legislature is aware of existing laws on the same subject and that it enacts new statutes in light of that knowledge. Minneapolis E. Ry. v. City of Minneapolis, 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956). But we need not rely on a presumption in this instance, because the legislature specifically identified the rules that it was repealing, and it did so in the very same chapter of the session laws in which it rewrote the statute, to address many of the same subjects. See 1999 Minn. Laws ch. 107, §§ 42, 67. Because the rule creating an exception for incarcerated applicants who are eligible for work-release has been repealed, relator  like the applicant for benefits in Mueller  was required to establish that he was available for work and there were "no other restrictions" that limited his ability to accept suitable employment. See Mueller, 633 N.W.2d at 94. As discussed above, relator's availability for employment was subject to restrictions, and he failed to satisfy that requirement.
Although there is no controlling caselaw directly on point, our conclusion that an applicant who is serving time in a local correctional facility or on EHM with the potential to obtain court approval to leave home to work is "incarcerated" and not "available" for employment without restrictions is consistent with cases that have addressed incarceration in other employment-related contexts. In Grushus v. Minn. Mining & Mfg. Co., 257 Minn. 171, 100 N.W.2d 516 (1960), the Minnesota Supreme Court concluded that an applicant who was "unable to accept" an offer of employment "because of his incarceration" was ineligible for and disqualified from receiving benefits because he had failed to accept suitable employment for reasons attributable solely to him. Id. at 175-76, 100 N.W.2d at 520. The court declined to adopt a rule applicable to all situations, recognizing that illegal detention of an applicant or an eventual determination of innocence might potentially preclude a finding that a particular applicant was at fault for failing to accept an offer of employment made during a period of incarceration. Id. at 176, 100 N.W.2d at 520. The applicant in Grushus was incarcerated as a result of his "plea of guilty," id. at 172, 100 N.W.2d at 517, which is also true of the relator in this case. Although "fault" is not the applicable test in this case, the basis of relator's unavailability for employment is clearly his own conduct and his guilty plea, which resulted in his criminal sentence.
The cases addressing whether incarceration constitutes "misconduct" when it results in an applicant's inability to appear for work as scheduled are consistent with our conclusion today and with the stated public purpose of providing unemployment benefits to those "who are unemployed through no fault of their own." See Minn.Stat. § 268.03, subd. 1. When an employee fails to appear for work, due to an unanticipated period of incarceration, that failure is likely to result in disqualification from benefits, even if the employee "obviously did not intend" that result and returned to work as soon as he was able to do so. Smith v. Am. Indian Chem. Dependency Diversion Project, 343 N.W.2d 43, 45 (Minn.App.1984). But if an employee has made arrangements to maintain existing employment while on work release and the employer's failure to cooperate results in the incarcerated employee being unable to appear for work as scheduled, those facts may preclude a finding of disqualifying misconduct, if the employee establishes *375 "that she could have come to work despite her incarceration." Jenkins, 721 N.W.2d at 292. Although "misconduct" is not the applicable test in this case, relator was not already employed, he identified no fault of any employer that resulted in his inability to accept employment while he was incarcerated and on EHM, and his inability to obtain and accept employment was solely attributable to his conduct.

DECISION
The unemployment-law judge correctly determined that relator was not eligible for unemployment benefits while serving a sentence in a correctional facility or while on EHM, despite the availability of work-release privileges because, during both periods, relator was incarcerated within the meaning of Minn.Stat. § 268.085, subd. 2(3) (2006).
Affirmed.
KLAPHAKE, Judge (dissenting).
I respectfully dissent. Although I agree that relator is ineligible for unemployment benefits during the time he was physically incarcerated in the Hennepin County Corrections Facility, from April 28, 2006, through June 26, 2006, this period of ineligibility should have ended upon his release to his home with an electronic monitoring device.
Minn.Stat. § 268.085, subd. 2(3) (2006), states that an applicant is ineligible for unemployment benefits while incarcerated or performing court-ordered community service. I agree with the majority that this statute is ambiguous as applied here. The statute supplies no definition for "incarcerated," and, as the majority points out, the rule that formerly provided some instruction was repealed. See Minn. R. 3305.0500 (1997), repealed 1999 Minn. Laws ch. 107, § 67.
But we must determine and give effect to legislative intent in construing the statute, and must construe it, if possible, to give effect to all its provisions. Minn.Stat. § 645.16 (2006). The majority argues that Minn.Stat. § 268.085, subd. 2(3), creates ineligibility beyond the factors of availability for work listed in subdivision 1. The plain language of Minn.Stat. § 268.085, subd. 2(3), describes availability, however, not blanket ineligibility: "The applicant's weekly unemployment benefit amount shall be reduced by one-fifth for each day the applicant is incarcerated[.]" Thus, the statute contemplates that an applicant can continue to collect weekly benefits, presumably when available for work, so long as those benefits are reduced by one-fifth for each day that the applicant is incarcerated, or presumably unavailable for work. Notably, the legislature included as ineligible a person performing community service. This again shows legislative concern for availability and not blanket ineligibility. Once relator was released and put on electronic monitoring, he was available for all approved activities, which included employment of up to six days per week. We can reconcile the provisions of this statute by balancing ineligibility and availability.
The majority relies on Mueller v. Comm'r of Econ. Sec., 633 N.W.2d 91 (2001), to argue that relator is unavailable for employment because of significant restrictions on his availability. But in Mueller, the employee had serious physical limitations from an injury and surgery that prevented her from working the hours that are "normal for the applicant's usual occupation or employment." Id. at 93. Relator was available for employment up to six days per week, more than a normal work week, and for the usual hours of his chosen occupation.
We also are assisted in ascertaining legislative intent by examining other laws on the same or similar subjects. Minn.Stat. *376 § 645.16(5). Although chapter 268 fails to include a definition of incarceration, the criminal code provides insight on what the legislature considers to be included within the meaning of "incarceration." Minn. Stat. § 609.135, subd. 1(a) (2006), refers to different levels of sanctions: imprisonment, probation, and intermediate sanctions. "Intermediate sanctions" are further defined to include
incarceration in a local jail or workhouse, home detention, electronic monitoring, intensive probation, sentencing to service, reporting to a day reporting center, chemical dependency or mental health treatment or counseling, restitution, fines, day-fines, community work service, work service in a restorative justice program, work in lieu of or to work off fines and, with the victim's consent, work in lieu of or to work off restitution.
Id. at subd. 1(b). Thus, the legislature clearly makes a distinction between incarceration and electronic monitoring.
Further, Minn.Stat. § 609.135, subd. 4 (2006), permits a court to order as a condition of probation incarceration in a county jail, regional jail, work farm, workhouse, or other local correctional facility. Subdivision 6 urges a court "staying imposition or execution of a sentence that does not include a term of incarceration as a condition of the stay" to use intermediate sanctions. Again, the legislature provides guidance for interpretation of the term "incarcerated" by not extending its meaning to include the lesser sanction of electronic monitoring. Had the legislature intended to include intermediate sanctions, such as electronic monitoring, in the list of circumstances which renders relator ineligible for benefits, it would have done so.
In my view, the majority's reliance on Smith v. Am. Indian Chem. Dep. Diversion Project, 343 N.W.2d 43, 44 (Minn. App.1984) and Jenkins v. Am. Exp. Fin. Corp., 721 N.W.2d 286, 288-89 (Minn.2006) is not helpful. In Smith, the employee lost his job because he failed to appear at work while incarcerated. Relator was unemployed and had established an account with the department before his incarceration; he did not lose his job because of the incarceration. In Jenkins, the Minnesota Supreme Court discussed whether the incarceration of an employee who was eligible for work release, but whose employer refused to cooperate with the details of obtaining work release, constituted misconduct for purposes of a denial of eligibility. Again, that is not the situation confronting us here.
The purpose of the unemployment compensation program is to protect workers who are unemployed through no fault of their own. Minn.Stat. § 268.03, subd. 1 (2006). The statute is deemed to be remedial in nature; as such, this court should narrowly construe disqualification provisions. See Jenkins, 721 N.W.2d at 289. Relator was unemployed, and available for and actively seeking employment. I would reverse the ULJ's decision finding relator ineligible for benefits solely because he was on electronic monitoring.