*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1193**

Lonn H. Luhman,
Relator,

vs.

Red Wing Shoe Co., Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 12, 2015
Affirmed
Reilly, Judge**

Department of Employment and Economic Development
File No. 32292011-3

Lonn H. Luhman, Goodhue, Minnesota (pro se relator)

Red Wing Shoe Co., Inc., Red Wing, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Chutich, Presiding Judge; Stauber, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Relator challenges the determination of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment misconduct. Because we find that substantial evidence supports the ULJ's determination that relator committed employment misconduct by failing to appear for work as scheduled under the company's no-fault attendance policy, we affirm.

## FACTS

Relator Lonn H. Luhman (Luhman) challenges the denial of his claim for unemployment benefits on the ground that the ULJ erred in determining that he was discharged for employment misconduct. Luhman was employed full time with respondent Red Wing Shoe Co., Inc. (Red Wing Shoe) from September 6, 1988, to February 20, 2014. Red Wing Shoe adopted a no-fault attendance policy providing that an employee who accumulates ten points in any rolling calendar year is subject to discharge. Points are accumulated based on an employee's full absence, partial absence, or tardiness from work. Red Wing Shoe imposes additional penalties on an employee who fails to call in and report an absence. Luhman was familiar with his company's attendance policy.

Luhman's 2013-2014 attendance report reveals that he accrued over seven points between March to December 2013 for illnesses and court appearances. Luhman's last day of work was Friday, February 7, 2014. On Saturday, February 8, Luhman was arrested in Dakota County for driving while intoxicated and remained in jail until

2

February 12. Luhman did not appear for work during his scheduled shifts on February 10-12 and accrued additional points for these three days, bringing his total penalty to over ten points within the rolling calendar year. On February 20, Red Wing Shoe terminated Luhman's employment for violating the company's attendance policy. Luhman subsequently applied for unemployment benefits.

On March 12, the Minnesota Department of Employment and Economic Development (DEED) determined that Luhman was ineligible for unemployment benefits because he was discharged for employee misconduct for failing to report an absence for all or part of a shift without a good reason. Luhman appealed DEED's decision and the ULJ conducted a telephone hearing on April 21. The ULJ issued his decision on April 22, finding that Luhman was discharged because of employee misconduct and was not eligible to receive unemployment benefits. The ULJ found that

> Although Luhman's absences prior to the final incident would not have constituted employment misconduct, the evidence shows that his final three absences were no call, no shows following his arrest for driving while intoxicated. Luhman was unable to report to work due to his incarceration following his arrest. Luhman's conduct interfered with his work as he could not report to work for three days because he was incarcerated.

Luhman requested reconsideration of the ULJ's decision, and the ULJ affirmed his April 22 findings and decision. This certiorari appeal followed.

## DECISION

When reviewing an unemployment insurance benefits decision this court may affirm, remand the case for further proceedings, or reverse and modify the decision if the

substantial rights of the relator have been prejudiced because, among other things, the decision is unsupported by substantial evidence in view of the entire record as submitted. Minn. Stat. § 268.105, subd. 7(d) (2014). Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). Whether an employee committed a particular act is a question of fact viewed in the light most favorable to the ULJ's decision and affirmed if supported by substantial evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But we review de novo the legal question of whether the particular act committed by the employee constitutes employment misconduct. *Id.*

## I.

An applicant who is discharged by an employer for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4 (2014). Employment misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6 (2014). Refusing to abide by an employer's reasonable policies and requests ordinarily amounts to employment misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Red Wing Shoe expected its employees to work their scheduled shifts and notify the company in advance of any absences. An employer has the right to expect an

4

employee to work when scheduled. *Smith v. Am. Indian Chem. Dependency Diversion Project*, 343 N.W.2d 43, 45 (Minn. App. 1984). An employee's failure to abide by Red Wing Shoe's attendance policy results in penalties under a points system. An employee who accumulates ten points in any rolling calendar year may be subject to discharge. The facts show that Luhman accrued over ten points within one rolling calendar year.

The Minnesota Supreme Court recognizes that absenteeism may qualify as misconduct, *Moeller v. Minn. Dep't of Transp.*, 281 N.W.2d 879, 881 (Minn. 1979), although "[w]hether an employee's absenteeism and tardiness amounts to a serious violation of the standards of behavior an employer has a right to expect depends on the circumstances of each case." *Stagg*, 796 N.W.2d at 316. Here, the ULJ determined that the absences between March and December 2013 "would not have constituted employment misconduct," but that Luhman's final three absences in February 2014 "were no call, no shows following his arrest for driving while intoxicated." The ULJ concluded that Luhman did not qualify for unemployment benefits because his absences on February 10-12 "interfered with his work as he could not report to work for three days because he was incarcerated."[1]

---

[1] DEED asks this court to take judicial notice of the public record of Luhman's subsequent conviction of a gross misdemeanor for driving while intoxicated and a felony for driving after cancellation, inimical to public safety. We may take judicial notice of public records and preserve "the inherent power to look beyond the record where the orderly administration of justice commends it." *Eagan Econ. Dev. Auth. v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 530 (Minn. 2010). The ULJ determined that Luhman committed employment misconduct by failing to report to work and that such conduct interfered with his employment. The ULJ's factual determinations are supported by substantial evidence in the record irrespective of Luhman's later conviction, and therefore we decline to take judicial notice of his subsequent conviction. *See also* Minn. Stat.

"Minnesota law allows an employer to establish and enforce reasonable rules governing employee absences." *Cunningham v. Wal-Mart Assocs., Inc.*, 809 N.W.2d 231, 235 (Minn. App. 2011). Indeed, even a single absence from work may constitute misconduct when an employee has not received permission to be absent. *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417 (Minn. App. 1986). The record substantially supports the ULJ's finding that Luhman accrued over seven points between March and December 2013 and failed to report to work for his scheduled shifts February 10-12 without giving proper notice, bringing his total to over ten points for the rolling year. Luhman's absenteeism displayed "a serious violation of the standards of behavior" that Red Wing Shoe had the right to reasonably expect from him. Minn. Stat. § 268.095, subd. 6(a)(1). The evidence in the record substantially supports the ULJ's finding that Luhman's conduct amounted to misconduct.

## II.

Having determined that Luhman's conduct constitutes employment misconduct, we next turn to whether the chemical-dependency exception applies. Although Luhman did not directly raise this issue on appeal, Luhman's chemical-dependency issues were addressed during the ULJ hearing and we therefore consider whether this exception applies. Employment misconduct does not include "conduct that was a consequence of the applicant's chemical dependency, unless the applicant was previously diagnosed

§ 268.095, subd. 6a(a)(1) (providing that "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on the employment" is aggravated employment misconduct).

6

chemically dependent or had treatment for chemical dependency, and since that diagnosis or treatment has failed to make consistent efforts to control the chemical dependency." Minn. Stat. § 268.095, subd. 6(b)(9).

We find that the chemical-dependency exception does not apply to the facts of this case. Minnesota law is clear that conduct related to driving while impaired that interferes with employment may qualify as employment misconduct. *See id*., subd. 6(c) ("[C]onduct in violation of sections 169A.20, 169A.31, or 169A.50 to 169A.53 that interferes with or adversely affects the employment is employment misconduct."). The ULJ did not make any specific factual findings regarding Luhman's chemical dependency. Instead, the ULJ based its misconduct-determination on the fact that Luhman was unable to report to work because he was incarcerated. The ULJ determined that Luhman was ineligible for benefits because his conduct, including his continued absenteeism and tardiness, interfered with his employment.

In *Jenkins v. Am. Exp. Fin. Corp*., the Minnesota Supreme Court declined to adopt a bright-line rule that "absenteeism resulting from incarceration was misconduct as a matter of law," and instead advised that a misconduct-determination should be based on the particular facts of each case. 721 N.W.2d 286, 290 (Minn. 2006) (citing *Grushus v. Minn. Min. & Mfg. Co*., 257 Minn. 171, 176, 100 N.W.2d 516, 520 (1960) (holding relator who failed to show up at work because he was arrested and incarcerated for an offense to which he entered a guilty plea had committed employee misconduct)); *see also Smith,* 343 N.W.2d at 45 (finding relator's unavailability to work due to arrest and incarceration for failure to pay a speeding ticket "amounted to disregard of attendance

standards which his employer had a right to expect him to obey"). The evidence in the record substantially supports the ULJ's finding that Luhman's conduct interfered with his employment because he failed to report to work for three days due to his incarceration, and the chemical-dependency exception does not apply.

## III.

Luhman submitted a pro se brief challenging the ULJ's ineligibility determination on the grounds that (1) his calling card did not work at the jail and he could not successfully dial out, and (2) he missed work to go to court to resolve a domestic issue. Assuming these arguments are true, there is no equitable basis for awarding unemployment benefits. Minn. Stat. § 268.069, subd. 3 (2014). Because there is no equitable ground for relief, we decline to reverse the ULJ's findings based on these additional arguments.

**Affirmed.**