DISSENT
CHUTICS, Justice
(dissenting).
. I respectfully dissent from the majority’s ■ legal' conclusion that Nina Wilson committed employment misconduct. Given the remedial nature of the unemployment-compensation statutes, along with the particular circumstances of this employment-application case, Wilson’s single misstatement about her educational level — especially when the misstatement did not satisfy the position description’s required minimum educational level of a “2 or 4 year undergraduate degree” — was not employment misconduct, that disqualified her from receiving benefits.
*464 As a threshold matter, I agree with the majority that the statutory definition of employment misconduct is exclusive and must be applied here.[1] The statute specifically defines “employment misconduct” as “any intentional, negligent, or indifferent conduct, on the job or off the job that displays dearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee.” Minn. Stat. § 268.095, subd. 6(a)(1) (2016) (emphasis added).[2] Whether an employee “was properly disqualified from receipt of unemployment compensation benefits is a question of law on which we are free to exercise our independent judgment.” Jenkins v. Am. Exp. Fin. Corp., 721 N.W.2d 286, 289 (Minn. 2006).
In determining whether Wilson’s conduct clearly displayed a “serious violation,” we note that the adjective “serious” has common and approved meanings that range from “non-trivial” to “important” to “weighty.” See Merriam-Webster’s Collegiate Dictionary 1066 (10th ed. 2001) (defining “serious” as “of or relating to a matter of importance” or “weighty”); The American Heritage Dictionary 1648 (3d ed. 1996) (defining “serious” as “[concerned with important rather than trivial matters”). In choosing among the ■ range of these established meanings of “serious,” the statute itself gives us guidance.
We have repeatedly recognized the Legislature’s directive that the statute is “remedial in nature and must be applied in favor of awarding unemployment benefits.” Minn. Stat.. § 268.031, subd. 2 (2016); see, e.g., Jenkins, 721 N.W.2d at 289. In particular, the Legislature specifically directed that, “[i]n determining eligibility or ineligibility for benefits, any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed.” Minn. Stat. § 268.031, subd. 2. Accordingly, construing “serious” narrowly in the context of unemployment-benefit laws, as the Legislature instructs us to do, a “serious violation” must be one of “much importance or consequence.”[3] See Merriam-Webster’s Collegiate Dictionary, supra, at 1336 (defining “weighty”).
*465 In construing whether a “serious violation” occurred here, the concept of materiality is relevant. The Department of Employment and Economic Development (the department) and the majority recognize as much: the department agrees in its- brief that “prior case law is a guide to the ‘standards of behavior’ and ‘reasonable expectations’ an employer can require,” and the majority recognizes “the general concept of ‘materiality’ as a factor in determining whether an employee’s conduct was a , ‘serious violation’ of the standards of behavior. that an employer could reasonably expect.” Thus, although past cases discussing materiality in the context of an employment application are not dispositive, they still may be instructive when interpreting and applying the current exclusive statutory definition of “employment misconduct.”
Critically, in determining whether an employee’s behavior is a “serious violation” of the standards of behavior an employer has a right to expect, our past cases make clear that the circumstances of each case are key. Stagg v. Vintage Place, Inc., 796 N.W.2d 312, 316 (Minn. 2011) (“Whether an employee’s absenteeism and tardiness amount[ ] to a serious violation of the standards of behavior an employer has a right to expect depends on the circumstances of each case.” (emphasis added)); Jenkins, 721 N.W.2d at 290. In Jenkins, for example, we emphasized the importance of making a case-by-case determination and we rejected applying a rigid rule of per se misconduct. We noted that we “declined to adopt a rale that absenteeism resulting from incarceration was misconduct as a matter of law.” Jenkins, 721 N.W.2d at 290. Rather, we directed the department to “base its determinations ‘upon the facts in each particular case.’” Id. (quoting Grushus v. Minn. Mining & Mfg. Co., 267 Minn. 171, 176, 100 N.W.2d 516, 520 (1960)).
Here, the department urges the court to depart from this well-established principle by adopting a per' se rule for dishonesty about one’s educational level. When an employee’s actual' incarceration and • subsequent absences do not give rise to a per se rale of employee misconduct, see id. & misstatement on an employment application surely cannot rise to misconduct as a matter of law. Such a broad-brush treatment of an applicants'.intentional — or even negligent — misrepresentation concerning her level of education runs afoul of the specific legislative directive that “any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed.” ■ Minn. Stat. § 268.031, subd, 2. Accordingly, adopting a bright-line rale treating' any and all misrepresentations óf educational level as employment misconduct is unwarranted.
Applying these principles here, the facts and circumstances. of this particular case show that Wilson’s misstatement, in the context of this hiring decision and course of employment, did not rise to the level of employment misconduct. First, the employment application shows that Mortgage Resource Center, Inc. (MRC) provided two routes by which prospective employees could enter the company: demonstrating a “2 or 4 year undergraduate degree or equivalent experience.” In terms of experience, MRC required “[a]t least 6 years of account management or customer service experience.” The record shows that Wilson obtained her position baséd on “equivalent experience” because a GED did not meet the job’s minimum educational requirement. The record further shows that Wilson more than met the experience avenue to employment — she had more than 20 years of experience in' customer service. Wilson’s actual work experience demonstrates that she had the ability to perform the particular position even without the *466 requisite college degree. Her misstatement about her education did not bear on her ability to do the job, which is an important consideration in weighing whether the misstatement was a “serious violation” under Minnesota’s unemployment-compensation laws.
Second, the record shows that Wilson did not try to deceive MRC into believing that she had the educational qualifications that the employer required for the position. The position statement specifying education required a “2 or 4 year undergraduate degree,” which is, at a minimum, two years of education and a college degree beyond the 6ED that Wilson inaccurately listed. Accordingly, Wilson’s prospective employer knew that Wilson did not have the educational level that it sought and that she did not qualify for the job based solely on- her education. Given her insufficient educational level, her misstatement did not prevent her future employer from questioning her ability to perform the particular job, making the misstatement less serious than those statements that attest to the position’s required qualifications.
Third, the nature of Wilson’s position provides further support that the misstatement was not a serious violation. Although the unemployment law judge credited MRC’s position that the misstatement “compromised MRC’s trust” in her,[4] the record shows that Wilson’s position did not involve confidential or sensitive information or the handling of money or valuable property. The requirements of her position did not demand heightened levels of trusts worthiness. This fact distinguishes her case from those instances in which a single incident of misconduct related directly to the employee’s job duties. See, e.g., Skarhus v. Davanni’s Inc., 721 N.W.2d 340, 344 (Minn. App. 2006) (concluding that theft of food involving a minimal dollar value was employment misconduct; because the employer could no longer trust the employee to handle money and accounts for sales, an essential part of a cashier’s position).[5]
Fourth, in weighing whether, under the circumstances present here, Wilson’s misstatement rises to the level of employment misconduct, the statute itself instructs us to consider whether Wilson was discharged for only a single incident. Minn. Stat. § 268.095, subd. 6(d) (2016) (“If the conduct for which the applicant was discharged involved only a single incident, *467 that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct.”)- The majority’s conclusion that Wilson’s misstatement about having received a GED should be considered to be three incidents is overreaching. MRC’s position and the unemployment law judge’s decision finding that “Wilson intentionally falsified her education level” show that the termination occurred “in large part” .because Wilson’s application stated that she had a GED, when she did not.[6]
Of course, I do not condone any misstatements on an employment application, whether intentional or negligent. But although a misrepresentation may warrant discharging an employee, it is not inevitably employment misconduct. Schmidgall v. FilmTec Corp., 644 N.W.2d 801, 806 (Minn. 2002) (“[T]he issue is not whether the employer can choose to terminate the employment relationship, but rather ^whether now that the employee has been terminated, there should be unemployment compensation-’ ” (citation omitted)). Here, applying the exclusive statutory definition to the facts and context of this particular case, Wilson’s single misstatement did not clearly display a serious violation, and thus did not rise to the level of employment misconduct. I would affirm the decision of the court of appeals, which holds that Wilson is eligible to receive unemployment benefits.

. Like the majority, my analysis is limited to this first definition of “employment misconduct” and does not consider subdivision 6(a)(2). See Minn. Stat. § 268,095, subd. 6(a).

. The majority dismisses these statutory provisions by asserting that the statutory definition of misconduct is not ambiguous. To be sure, a statute’s construction directive does not justify going beyond the terms of the statute to adopt "a meaning not intended by the legislature.” Krueger v. Zeman Constr. Co., 781 N.W.2d 858, 863 (Minn. 2010) (citation omitted) (internal quotation marks omitted). But here, where the statute contains not just a general statement that it'shall be "construed liberally,” but also a specific provision requiring ("must”) a narrow construction of those provisions that would bar an applicant from receiving benefits, the court should honor “the letter of the law” in interpreting the meaning of the term "serious.” See Minn. Stat. § 645.16 (2016); Krueger, 781 N.W.2d at 861 ("We 'construe words and phrases .., according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature.’ ” (quoting ILHC of Eagan, LLC v. Cty. of Dakota, 693 N.W.2d 412, 419 (Minn. 2005))); see also Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Rd. 611 (1949) ("Statutory definitions control the meaning of statutory words,”).

. In fact, the unemployment law judge con- . eluded only that MRC discharged Wilson "in large part” because of the discrepancy in her educational background. Whether that statement of causation satisfies the statute has not been challenged. But the facts in the record suggest another theory: that MRC, which was being acquired by another company, seized on the educational discrepancy to terminate the employment of Wilson, who was on a temporary leave of absence because of medical issues.
The record shows that MRC received Wilson’s background report on June 17, 2014, about one week before she began work. MRC did not inquire about the discrepancy, however, until September 10, 2014. Its'inquiry came only after MRC had received Wilson's request for an indefinite leave of absence, MRC had warned her that it could not keep her position open while she was gone, and MRC had terminated her healthcare coverage. In addition, Wilson had applied for unemployment benefits in early September. As the President of MRC testified, "[W]e had two issues going on. We chose to terminate Mrs. Wilson as a result of her misstatements on her application. Ultimately, had she not returned to work we would have replaced her with another employee.”

. Skarhus was decided under an earlier version of the "single incident” provision of the unemployment compensation law, Minn. Stat. § 268.095, subd. 4(1) (2004), but it continues to show that any alleged dishonesty must be evaluated in light of the circumstances of each case, Skarhus, 721 N.W.2d at 344.

. In listing her education, Wilson circled twelfth grade as the highest grade completed. Since a GED is a high school equivalency test, this assertion is part and parcel of listing a GED as a degree. In addition, the assertion that Wilson committed another act of misconduct when she did not provide a copy of her GED when requested in September is unavailing. The company specifically stated in the letter that if it did not receive the GED information in a week, it "will proceed under the assumption that the representation in your application was not accurate.” As the unemployment law judge found, Wilson did not have a GED; her lack of response was thus understandable, especially considering that Wilson was on a leave of absence for ill health and that the company had informed her on August 20, 2014, that it needed to, “immediately begin the process of hiring someone else to perform [her] position.”